HONOLULU PAPER COMPANY, LIMITED, *v.* FREDERICK K. MAKINO AND MICHIE MAKINO.

No. 2190.

ARGUED FEBRUARY 9, 1937.          DECIDED FEBRUARY 25, 1937.

COKE, C. J., BANKS AND PETERS, JJ.

OPINION OF THE COURT BY PETERS, J.

This is a suit to foreclose a mortgage on real property given to secure a series of thirty promissory notes aggregating $14,850.43. The notes are dated August 2, 1930, are payable to the Honolulu Paper Company, Limited, and are signed by Frederick K. Makino. Michie Makino, the wife of the maker of the notes, joined with her husband in the execution of the mortgage in token of her release of dower in the premises conveyed. The consideration of the notes was a balance claimed by the payee to be then due it from the maker for news roll theretofore sold and delivered by it to the maker under agreements to sell hereinafter referred to covering the period from October 2, 1923, to December 31, 1932. The mortgagors defended upon the grounds of partial payment and fraud, alleging in substance in support of the latter defense that Mr. Makino had been induced to enter into the several agreements to sell by the false and fraudulent representations of the appellee, its

agents and servants to the effect that appellee was selling said appellant newsprint paper at mill prices and that its only commission or profit under the agreements to sell was a commission of five per cent; that during the period from October 31, 1927, to January 1, 1931, when the agreement between the parties was in parol, appellee orally agreed with said appellant to sell him newsprint at mill prices and at such time and on various occasions prior thereto appellee, through its officers, agents and employees, had assured said appellant that newsprint paper would be sold to him at mill price, that is, the price set by the manufacturer of the paper, for delivery at the docks at Honolulu and that the only profit appellee was making in the transactions was a commission of five per cent; that said appellant executed the said notes and mortgage relying upon the false and fraudulent representations of the appellee, its agents, officers and employees that he was indebted to appellee in the sum of $14,850.43; and that the aggregate amount in excess of mill price agreed upon during the existence of the several agreements to sell was the sum of $15,033.74. Appellants filed a cross bill pleading a setoff against appellee in the amount of such alleged excess.

The trial judge granted the prayer of the bill; denied to appellants any affirmative relief; determined the balance due on account of principal of said notes and ordered foreclosure. A decree was entered accordingly, whence this appeal.

Appellants assign the decree as error arguing that it should have been in their favor for the full amount of their setoff and that the evidence was insufficient to support the decree as entered. With this contention we are unable to agree.

On October 2, 1923, and since, the appellee was engaged in business in Honolulu in the sale of newsprint paper, job printing paper and other kinds of merchandise needed by

the printing trade. During the same period the appellant, Frederick K. Makino, was the proprietor and publisher of a daily newspaper in said Honolulu. News roll, or newsprint as it is otherwise known, required for newspapers is not manufactured locally and must be imported from abroad. During the period referred to appellee sold and delivered to said appellant large quantities of newsprint, under the terms of six successive agreements to sell entered into between the parties, five of which were in writing and one in parol. The first agreement to sell is dated October 2, 1923, and covers that portion of the period beginning March 1, 1924, and ending February 28, 1925; the second, August 5, 1924, and covers that portion of the period beginning August 1, 1924, and ending December 31, 1925; the third, November 7, 1925, and covers that portion of the period beginning January 1, 1926, and ending June 30, 1926; the fourth, September 29, 1926, and covers that portion of the period beginning November 1, 1926, and ending October 31, 1927; the fifth is in parol and covers that portion of the period from the expiration date of its predecessor to the effective date of its successor, and the sixth and last is dated October 29, 1930, and covers that portion of the period beginning January 1, 1931, and ending December 31, 1932.

The terms of the respective written agreements to sell are substantially uniform. A brief analysis of their terms sustains this observation. They all refer to news roll or newsprint. The maximum quantity to be delivered is fixed in one, two and three (referring to the agreements to sell consecutively by number, beginning with the first); both maximum and minimum deliveries are fixed in four and six and six contains additional provisions to meet the contingency of increase or decrease in tonnage desired by the buyer or in the size. In all, the price is a unit price per hundredweight f.o.b. sidewalk of the buyer's place of busi-

ness; four and six, however, containing the additional provision that in the event of the buyer being unable to take delivery sidewalk his place of business there should be an additional charge for warehousing and cartage. Six also contains the provision that in the event of failure to give notice of desired increased tonnage and of the necessity of purchase from other than the seller's regular source of supply any increase in freight, cartage cost, etc., over the seller's normal cost would be borne on a basis of half by the seller and half by the buyer. All contain the provision that face value of invoices be paid net cash on delivery except agreement four which extends a credit of thirty days and imposes interest of eight per cent on arrears. In six the buyer is prohibited from purchasing news roll elsewhere. All, except the first, contain a provision substantially similar in form to the effect that if during the life of the agreement the mill should reduce the cost of paper, such reduction should be given to the buyer based on the same ratio of profit as on the original price reserved but that the price should not be advanced regardless of the market.

It is into these agreements to sell that Mr. Makino claims he was induced to enter by the false representations of the agents and servants of the appellee.

Evidence was introduced by the parties pro and con. Its detailed analysis, however, would serve no useful purpose. Suffice it to say that in addition to the evidence of the existence of these several agreements to sell and the continued unqualified acceptance and recognition by Mr. Makino of the provisions thereof for the time being respectively applicable; of the repeated payment by Mr. Makino on account of the face value of invoices of newsprint delivered; of the merger of the balance of the indebtedness accrued under the agreements into the notes for which the mortgage was given as security, it is further undisputed

that the amount of the indebtedness existing on August 2, 1930, was the result of an account stated between the parties; that the mill price of newsprint at all times was freely quoted in the markets where manufactured and easily and readily ascertainable in Honolulu and that the present claim of fraud was never made, much less intimated by Mr. Makino, until the eve of the institution of the proceedings in the instant case.

The trial judge found against the appellants upon the defense of fraud. He held in substance that the evidence was insufficient to sustain the allegations of fraud; that the oral agreement to sell was similar in terms to its predecessor, the contract of September 29, 1926; that the several agreements to sell, that is, the five agreements in writing and the one in parol solely and truly reflected the contractual relations of the parties; that the said appellant, on August 2, 1930, was justly and truly indebted to the appellee for news roll paper sold by the latter to the former under said agreements to sell in the aggregate amount for which the serial notes and mortgage were given.

These findings of the trial judge on appeal are entitled to great weight. But in arriving at our conclusions resort to this rule becomes unnecessary. We have carefully examined the record. It admits of no doubt with whom of the parties lie the weight and credibility of the evidence. The allegations of fraud are unsupported by any evidence worthy of credence. Under the law the burden of their proof was cast upon the appellants. In this they have failed. Under the circumstances the decree was inevitable.

The appellant, Frederick K. Makino, as a part of his case, offered evidence of a trade usage allegedly obtaining in Honolulu during the entire period covered by the several agreements to sell to the effect that jobbers such as the appellee imported news roll or newsprint on a commission

of five per cent. This evidence was rejected by the court and its refusal is assigned as error. Holding as we do that there was no fraud, the error, if any, in rejecting this evidence was not prejudicial. The language of the respective agreements to sell in respect to the price to be paid by the buyer for newsprint to be sold and delivered thereunder by the seller was neither ambiguous nor technical. It required no trade usage, if any existed, to discover its meaning. "To have admitted the usage offered in evidence * * * would have been to make a contract for the parties differing materially from the written one[s] under which they had both acted * * *." *Partridge* v. *The Insurance Co.,* 15 Wall. (U. S.) 573, 579. This observation applies equally to the price which obtained under the oral agreement, which the trial judge held was similar in that regard to the terms of its written predecessor. While evidence of the existence of a trade usage is competent to ascertain the true meaning of a contract in the absence of fraud proof of such usage should not be received if it contradicts expressly or by implication the language of the contract. "Usage may be admissible to explain what is doubtful, it is never admissible to contradict what is plain." *Blackett* v. *The Royal Exchange Assurance Co.,* 2 C. & J. 249, 2 Tyr. 266, 1 L. J. Ex. 101, 149 Eng. Rep. 106, 108.

One of the errors assigned is the inclusion in the decree in addition to foreclosure, of a money decree personally against Michie Makino, the wife of the appellant. This assignment requires but brief attention. The appellant, Frederick K. Makino, was the sole maker of the serial notes referred to and hence Michie Makino, his wife, was not personally liable for the balance found due thereunder. It will be necessary that the decree be modified in that respect. This was conceded by appellee.

All other assignments of error properly alleged have been considered and found without merit.

The decree appealed from is affirmed, except as to that portion thereof as contains a money decree against the appellant Michie Makino and as to such portion of said decree the same is reversed and the cause remanded with instructions to the trial judge to modify the decree accordingly.

*J. V. Esposito* (*B. S. Ulrich* on the briefs) for appellants.

*M. K. Ashford* (*F. E. Thompson* with her on the brief) for appellee.