[Civ. No. 7151. Fourth Dist. Jan. 7, 1964.]

OHIO CASUALTY INSURANCE COMPANY, Plaintiff and Appellant, v. MANUEL ARMENDARIZ, Defendant and Respondent.

Parker, Stanbury, McGee, Peckham & Garrett and Kenneth R. Garrett for Plaintiff and Appellant.

Murphy & Donahue and Arthur J. Donahue for Defendant and Respondent.

GRIFFIN, P. J.—Plaintiff-appellant Ohio Casualty Insurance Company filed this action seeking declaratory relief against defendant Henry J. Martinez and defendant-respond-

ent Manuel Armendariz, alleging that Martinez received a policy of automobile insurance issued by plaintiff; that said policy of automobile insurance contained a "non-owner" endorsement thereon limiting coverage; that on May 23, 1960, Martinez, while driving a certain truck, was involved in a collision with defendant Armendariz who, as a result of said collision, filed a personal injury action in Orange County against Martinez and others. Armendariz, respondent herein, filed an answer in this action, admitting the collision and alleging negligence on the part of Martinez and asserts that if judgment is rendered in his favor he will proceed against all persons responsible to effect collection. Defendant Martinez defaulted in the action in the trial court and in this action. The prayer for relief is for a declaration that the policy of insurance did not apply to this accident and that plaintiff is not obligated to defend the action on behalf of Martinez.

Basically, the facts in the case are not in dispute. Prior to 1959, Henry J. Martinez had his driver's license suspended by the Department of Motor Vehicles. Subsequently he was advised that he could have his suspension lifted and his license returned provided he established proof of insurance coverage in conformance with driving restrictions to be placed upon his driver's license. Martinez then went to a Mr. LeJun, whose father was a bail bondsman, told him of his desires and asked him to get some insurance for him. Martinez obtained the necessary printed application blank form published by the California Automobile Assigned Risk Plan from some source, filled it out and swore to it before a notary public on July 18, 1959. This application is directed to the California Automobile Assigned Risk Plan (a state agency) at a San Francisco address.

In answer to question No. 10 on the application, as to the description of vehicle requiring insurance, applicant answered "None." (There is a footnote to this question reading, in part: "If proof of ability to respond in damages ... is required, list all vehicles *registered to the applicant*.") (Italics ours.)

Question: "11 b. Is there any operator under 25 years of age resident in the applicant's household ...? (No answer.) [If no, skip to question 11 d.]"

Question: "11 c. There are no such operators of the automobile under 25 years of age except the following:...."

Answer: "Applicant, (age) 19 ..."

Question: "13. The purposes for which the vehicle is to be used are:"

Answer: "Pleasure."

Question: "14. Registered owner of vehicle to be insured is:"

Answer: "None."

Question: "16. Has applicant a valid Driver's License?"

Answer: (indicated no)

Question: "27. Is applicant required to file proof of ability to respond in damages?"

Answer: (indicated yes)

Question: "27a. If answer is 'Yes,' indicate Motor Vehicle Department file or case number and what form of certificate should be filed with the Motor Vehicle Department. Operator—Owner—Owner and Operator."

Answer: (indicated "Operator")

Question: "28. If applicant has not been convicted of any of the offenses listed above, why is filing required . . .?"

Answer: (indicated "Because of an uninsured accident" and "because applicant is a minor.")

Question: "32. Has applicant within the past sixty days attempted but have been unable to secure automobile *bodily injury and property damage* liability insurance in this State?"

Answer: (indicated "Yes.")

Statement No. 33 provides:

"I hereby designate as Producer of Record for this insurance W. H. Neessen of Westminster, State of California."

Neessen certified thereon that he was a licensed California agent; that: "I have tried and have been unable to obtain automobile bodily injury and property damage liability insurance for this applicant through ordinary methods. I have read the Assigned Risk Plan for this State and have carefully explained its provisions to the above applicant. . . ." The applicant therein, under No. 33, agreed to subscribe to the California Automobile Assigned Risk Plan in its entirety and "hereby declare myself bound by its provisions" and to pay for the balance of full premiums required. This application is stamped, "Received July 29, 1959 Los Angeles." Who or what agency received it is not indicated. An additional stamp is placed thereon, "Financial Responsibility filing required 15% surcharge permitted."

At the trial, an underwriter for the Ohio Casualty Insurance Company testified that he processed the application of Martinez; that this type of policy is normally processed in this fashion; that if the applicant is unable to obtain a policy

through normal channels, he can obtain, through any agent or broker or the Department of Motor Vehicles, an application such as this to be filled out in duplicate and transmitted with a fee to the San Francisco office of the California Assigned Risk Plan and they in turn assign this case to some insurance company whose turn it might be and that this is on the basis of the volume of business done by the company in the State of California; that after this application has been assigned to that particular company, the company reviews the application and on the same day sends a quotation direct to the insured with a copy to the Assigned Risk Plan and to the broker, indicating that the company would issue a policy upon payment of so many dollars premium, setting a 15-day period for the payment of premium; that in this case the payment was made ($154.22) and in accordance with the plan, a policy was issued effective the day after the company received the premium, i.e. August 6, 1959.

The broker in the instant case was W. H. Neessen. On August 5, 1959, a copy of the policy went to the broker. The policy issued by plaintiff, and countersigned by W. H. Neessen, as agent of the Assigned Risk Plan, was for a $10,000-$20,000 bodily injury and $5,000 property damage. A charge of financial responsibility filing fee was $6.39 and the assigned risk surcharge was $20.12, totaling $154.22 for the full policy. The description of the car insured on the policy was marked "See endorsement." The endorsement is entitled "Non-Owner Policy," and reads in part: "It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, for Property Damage Liability and for Automobile Medical Payments applies with respect to the use of any automobile by or on behalf of the named insured or his spouse if a resident of the same household, subject to the following provisions:

"2. The insurance does not apply:

"(a) to any automobile *owned by the named insured or a member of the same household* ..." (Italics ours.)

This instrument, dated August 6, 1959, was also signed by plaintiff company and for the Assigned Risk Plan by W. H. Neessen, Agent.

Attached thereto was a duplicate pink paper, entitled "California Financial Responsibility Insurance Certificate," SR 22, indicating that it was to be filed with the Division of Drivers Licenses, Sacramento, certifying that plaintiff company has issued to, or for the benefit of, Henry J. Martinez, a motor vehicle liability policy which is in full force

and effect on the effective date of this certificate. The certificate states: "2. OPERATOR'S POLICY covering the use by the insured of any motor vehicle *not owned by or registered to him*. (Italics ours.) This certificate, signed by the plaintiff company and the Assigned Risk Plan agent, was dated August 6, 1959. The footnote thereon states: "As provided in Section 415.5 of the Vehicle Code, the named insured will be granted a license permitting him to operate only such motor vehicles as are covered by this Financial Responsibility Insurance Certificate."

On cross-examination, plaintiff's agent stated that he determined from the applicant's application the nature of the policy to be issued, i.e., as an owner or nonowner type; that even though the application states that he was only driving for the purpose of pleasure and apparently did intend to drive a car, he made no further inquiry of the applicant as to the facts; that there was no indication in the application that he would or would not be driving a car owned by a member of his household; that even without this information, he issued a policy that precluded the applicant from driving his own car or from driving a car of any member of his household; that, in effect, the pink slip certificate forwarded to the Motor Vehicle Department and to the Assigned Risk Department told them that the policy the company was issuing would cover any vehicle not owned by or registered to the applicant; that the nonowner endorsement provision of the policy is narrower in the scope of insurance coverage than the pink slip notice sent to the Motor Vehicle Department (Division of Drivers Licenses), Sacramento, in that the nonowner endorsement provision states that the insurance does not apply to any automobile "owned by the named insured or member of the same household," when the notice to the Motor Vehicle Department indicated that the named insured will be granted a license permitting him to operate only such vehicles as are covered by this certificate, which designates that the operator's policy covers the use by the insured of "any motor vehicle not owned by or *registered to him.*" (Italics ours.)

It was apparently upon this notice that the Motor Vehicle Department issued to applicant an interim operator's license with the only restriction noted thereon that the operator was "...limited to operating motor vehicles which are *not* registered in the name of the licensee." As will be noted, no mention is made of ownership.

It appears that Martinez was, and had been, living with his parents for a period of five years; that he and his father purchased the 1954 Ford pickup truck which he was driving at the time of the accident about three days before the accident; that he was purchasing it for his use and his father's use; that he paid the down-payment from his own money; that it was purchased and registered in his father's name; that he was under 21 years of age at that time and that the family had two or three other cars around the house and he expected to drive any one of them under the policy; that he believed, and it was his understanding, that he could drive any car except one registered in his own name, and that was what he thought he bought when he obtained the policy; that the car was wrecked in the accident and no further payments were made. Martinez testified that he received a copy of the insurance policy but did not read it and could not locate it at the time of the trial.

The court, from the evidence produced, found generally that the policy was characterized as a "non-owner policy"; that it is true that Martinez made the initial payment on the pickup truck and intended to make the additional payments thereon; that it is not true that the policy does not cover any claims arising out of said accident or that plaintiff is not obligated as an insurer to defend Martinez or satisfy any judgment against him. It found that the policy was in full force and effect in respect to the claim of respondent Armendariz; that it is true that the Ford truck was registered in the name of John G. Martinez; that it is not true that Henry J. Martinez had a registered interest in it but did have an *"equitable owner's interest"* therein and that plaintiff *is not entitled to anything and respondent Armendariz is entitled to judgment on his answer.* Judgment went accordingly and it was declared that the policy was in full force and effect on May 23, 1960 and covered the accident involved.

On this appeal, plaintiff company argues that, under Vehicle Code, section 16452 (now in effect), an operator's policy of liability insurance may be issued for loss from liability for damages out of use by the operator of any motor vehicle not owned by him; that plaintiff company issued to Martinez such a policy; that the court found that he had an equitable owner's interest in the truck and accordingly plaintiff was relieved of any liability (citing *Rody* v. *Winn,* 162 Cal.App. 2d 35 [327 P.2d 579]; *Pacific Tel. & Tel. Co.* v. *Wellman,* 98

Cal.App.2d 151 [219 P.2d 506]); that an insurance company has a right to limit the coverage of a policy issued by it and when it has done so the plain language and the limitation must be respected (citing *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R.2d 914]); that if there is any conflict in the meaning between an endorsement and the body of the policy, the endorsement controls (citing *McConnell* v. *Underwriters at Lloyds*, 56 Cal.2d 637, 640 [16 Cal.Rptr. 362, 365 P.2d 418]); that the policy was thus issued and Martinez had no right to rely upon the notice of restriction made on his driver's license as affecting the terms of the policy and what statements were made to an independent agent under the Assigned Risk Plan may not be used to estop the insurer from claiming the terms of the policy were enforceable and that an applicant is presumed to know the conditions of his policy. (Citing *Matsuo Yoshida* v. *Liberty Mutual Ins. Co.*, 240 F.2d 824.)

It has been held that an insured has a right to rely on the presumption that the policy issued and received is in accordance with his application and his failure to read it will not necessarily relieve the insurer or his agent from the duty of so writing it. (*Mercer Casualty Co.* v. *Lewis*, 41 Cal.App.2d 918 [108 P.2d 65]; *Ames* v. *Employers Casualty Co.*, 16 Cal. App.2d 255 [60 P.2d 347].)

Viewed in this light, it is apparent from the application made out by Martinez that the policy actually issued by the company was not entirely in accord with the application. As will be noted, Martinez was told by the Department of Motor Vehicles that if he secured an insurance policy, his driver's license would be restored. He proceeded upon this theory. He indicated in the application that there was no particular vehicle requiring insurance; that there were no operators of the automobile under 25 years of age except applicant, aged 19; that the purpose of using the vehicle was for pleasure; that there was no registered owner to be insured; that he had no valid driver's license. He requested that the form of certificate that should be filed with the Department of Motor Vehicles was "operator," as distinguished from "owner" and "owner and operator."

Vehicle Code, section 16452 (passed since the adoption of former Veh. Code, § 415) provides: "An operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed on him by law for damages arising out of use by him of any motor vehicle

not owned by him...." No mention is made therein about the automobile being owned by a member of the same household, as provided in the endorsement on the policy, which appears to be an additional condition imposed by plaintiff company. No mention is made in the policy in reference to the provision respecting the driver being a registered owner of a car. The pink certificate (SR 22), executed by plaintiff company and W. H. Neessen on behalf of Assigned Risk Plan, certified that the company had issued a motor vehicle liability policy, as defined in Vehicle Code, section 415 (1957), which defines the requisites of the policy for the benefit of Martinez, in the form of an "operator's policy" rather than a "nonowner policy" as issued by plaintiff company "covering the use by the insured of any motor vehicle *not owned by or registered to him.*"

This full limitation was not placed on his operator's license when issued. The only limitation was in respect to his being the registered owner of such a vehicle. It is apparent that the ultimate conditional privilege granted the operator was different from that covered by the policy and that the policy contained conditions different from that for which the application was made. These facts fully justified Martinez and the public at large in believing that he was fully authorized to drive a nonregistered car and had complied with the Assigned Risk Plan. The sound rule of public policy has not been changed. ██ The entire Automobile Financial Responsibility Law must be liberally construed to foster its main objective of giving monetary protection to persons who suffer grave injury through the negligent use of the highways by others. (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.*, 58 Cal.2d 142, 144 [23 Cal.Rptr. 592, 373 P.2d 640].)

██ It is apparent that the vehicle was not registered in the name of the driver. He was 19 years of age and it was quite reasonable to believe that the conditional vendor of the truck would not sell it to a minor. The father, not the son, signed the conditional sales contract and became liable for the payments. The father was the registered owner and ostensibly, upon payment of the amount due, would have become the legal owner. Plaintiff company now seeks to be relieved of liability because it might, in this action, establish some form of equitable ownership in the car by the insured as between the father and son, which ownership is different from the recorded transaction. We do not believe that, in view of the public policy existing and expressed in *Interin-*

*surance Exchange* v. *Ohio Cas. Ins. Co., supra,* 58 Cal.2d 142, in the absence of fraud or a clear misrepresentation, it was intended that an insurer, under the plan, might be excused from liability under such a policy by merely showing that the insured may possibly have some equitable interest in the vehicle involved and accordingly he becomes an owner thereof within the meaning of California Vehicle Code, section 415 (1957).

Section 66 of that code (1957) provides: " 'Owner' is a person having all the incidents of ownership, including the legal title of a vehicle...." It then defined a "legal owner" in section 67, and "registered owner" in section 68.

*Stoddart* v. *Peirce,* 53 Cal.2d 105 [346 P.2d 774], and *Logan* v. *Serpa,* 91 Cal.App.2d 818 [206 P.2d 70], relied upon by plaintiff, are factually distinguishable.

If we accept the general definition of an "owner," as used in the policy, its endorsement and the notice to the Department of Motor Vehicles, it refers to an "owner" as a person "having all the incidents of ownership, including the legal title." The showing here was insufficient to bring Martinez within the definition set forth in Vehicle Code, section 66.

■ Exceptions and exclusions in an insurance policy are construed strictly against the insurer and liberally in favor of the insured. (*Visco Flying Co.* v. *Hansen & Rowland, Inc.,* 184 Cal.App.2d 829 [7 Cal.Rptr. 853].) ■ If the doubt relates to extent or fact of coverage, whether as to peril insured against, amount of liability or person or persons protected, the language will be understood in the most inclusive sense, for the benefit of the insured. (*Ensign* v. *Pacific Mutual Life Ins. Co.,* 47 Cal.2d 884 [306 P.2d 488].) ■ It is the public policy of this state to protect policy holders from errors by those entrusted with the management of insurance companies and the state has regulated the matter of insurance contracts and policies by numerous provisions contained in the Insurance Code, and by various other enactments directly and indirectly affecting or touching on matters of insurance contracts and policies. ■ Generally, to the extent of such statutory regulations, an insurance contract or policy must conform to it. (27 Cal.Jur.2d § 169, p. 655.)

■ Since Martinez was not such an owner nor a registered owner, the finding of the trial court must be upheld.

Judgment affirmed.

Coughlin, J., and Brown (Gerald), J., concurred.