[S. F. No. 21315. In Bank. Nov. 25, 1964.]

MISSION INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v. FLORENCE FELDT et al., Defendants, Cross-complainants and Respondents; ALL-STATE INSURANCE COMPANY, Cross-defendant and Appellant.†

†Reporter's Note: This case was previously entitled ''Mission Insurance Company v. Bailey.''

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

Bronson, Bronson & McKinnon and Ernest M. Thayer for Cross-defendant and Appellant.

Thomas C. Lynch, Attorney General, and G. A. Strader, Deputy Attorney General, as Amici Curiae on behalf of Cross-defendant and Appellant.

Walcom & Harmon and Leo J. Walcom for Plaintiff, cross-defendant and Respondent.

No appearance for Defendants, Cross-complainants and Respondents.

PEEK, J.—In this appeal by Allstate Insurance Company, the question is whether respondent Mission Insurance Company is liable under its nonowner or operator's policy of

liability insurance issued to Jasper L. Bailey at the time Bailey negligently operated an automobile registered in the name of a joint venture of which he was one of the partners. We hold that such derivative ownership interest by Bailey in the accident vehicle did not invalidate his nonowner's policy and relieve Mission of liability under that policy. Since Bailey was not uninsured at the time of the accident, the trial court erred in determining that Allstate was liable under the uninsured motorist clause in a liability policy which covered the victims of the accident, Florence Feldt and Vincent Gandolfo.

The action arose when Mission sought a declaration of nonliability against its insured, Bailey, and the accident victims, Feldt and Gandolfo. The injured parties cross-complained against Bailey, his insurance carrier, Mission, and also joined Allstate as the carrier of the uninsured motorist coverage which protected them in the event Bailey was not insured. (Ins. Code, § 11580.2.) Bailey was subsequently dismissed as a cross-defendant and did not appear on appeal.

Bailey's driver's license was suspended for a number of years for failure to satisfy a judgment against him. Near the end of the period of suspension in order to secure a license he took steps to furnish proof of financial responsibility for any accidents he might be involved in, as required by the Vehicle Code.[1] Since Bailey did not own a vehicle for which an owner's policy could be issued,[2] he applied for an operator's policy.[3]

The agent who placed Bailey's policy indicated in his testi-

---

[1]Section 16371 (all statutory references are to the Vehicle Code unless otherwise noted) states: ''The suspension shall remain in effect, and no motor vehicle shall be registered in the name of the judgment debtor nor any liecnse issued to such person . . . until the judgment debtor gives proof of ability to respond in damages. . . .''

Section 16430 in turn provides: ''Proof of ability to respond in damages when required by this code means proof of ability to respond in damages resulting from the *ownership or operation* of a motor vehicle. . . .'' (Italics added.) It is apparent that the Legislature intended to provide full liability insurance coverage for an individual required to furnish proof of ability to respond in damages as a condition for issuance of a driver's license.

[2]It is prescribed by section 16451 that: ''An owner's policy of liability insurance shall: (a) Designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby intended to be granted.''

[3]Section 16452 states: ''An operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed on him by law for damages arising out of *use* by him of any motor vehicle *not owned by him*. . . .'' (Italics added.)

mony at trial that registration was the sole criterion in determining the type of policy issued, so that an ''unownership'' policy was issued unless the applicant had vehicles registered in his name. As issued to Bailey, Mission's policy recited: ''The insurance does not apply: (a) As respects the named insured, to any automobile *owned by* the named insured. . . .'' (Italics added.) Mission then filed with the Department of Motor Vehicles the official form SR 22, ''California Financial Responsibility Insurance Certificate,''[4] and the department reinstated Bailey's driver's license. As issued by the department Bailey's license allowed him to operate only vehicles not owned or registered in his name. A department official explained in his testimony that the limitation on Bailey's license ''restricted him to operating vehicles not registered in his name.''

A few months after his driver's license was reinstated Bailey and another individual, Frank Johnson, made plans to form a joint venture to book dance bands. They purchased a station wagon to transport the musicians and registered it with the department in the name of ''J & B Enterprises.'' There was no indication on the application for registration that Bailey had any ownership interest in the vehicle. Bailey furnished the major portion of the down payment, although Johnson signed the contract with the financing bank. Even though J & B Enterprises did not actually engage in business, apparently Johnson retained some use and control over the station wagon. However the vehicle was used principally by Bailey for his personal affairs.

Because there is no question that Bailey was responsible

---

[4]Form SR 22 as used herein has two boxes on its face to be checked by the carrier following its statement that a motor vehicle liability policy has been placed in force. Beside the box labeled ''1'', is the explanation: ''OWNER'S POLICY covering the following described motor vehicle(s) owned by or registered to the named insured.'' The note beside box ''2'' reads: ''OPERATOR'S POLICY covering the use by the insured of any motor vehicle not owned by or registered to him.''

The instructions on the reverse side of Form SR 22 are as follows:

''Check boxes according to insurance coverage. See below.

1. Check Item 1 when the insured is covered in the use of all motor vehicles *registered* in his name.
2. Check Item 2 when the insured is covered in the use of any motor vehicle *not owned by him or registered in his name.*
3. Check both Item 1 and Item 2 when the insured is covered in the use of all motor vehicles *registered in his name* and also in the use of all motor vehicles *not registered in his name.*

NOTE: The Department shall not accept any certificate or certificates unless the same cover all motor vehicles registered in the name of the insured.'' (Italics added.)

On the form filed by Mission it checked only box number two.

for the injuries to Feldt and Gandolfo, Mission and Allstate stipulated that the damages are payable by one of them according to whether the owner exclusion in the Mission policy was applicable.[5]

In determining whether the station wagon was owned by Bailey within the meaning of the Mission policy and the statutes governing the terms of that policy (see *Wisdom* v. *Eagle Star Ins. Co.*, 211 Cal.App.2d 602, 604 [27 Cal.Rptr. 599]), we note that ''the *entire* automobile financial responsibility law must be liberally construed to foster its main objective of giving 'monetary protection to that everchanging and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others' '' (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.*, 58 Cal.2d 142, 153 [23 Cal.Rptr. 592, 373 P.2d 640]). Also, we view the question before us as if the Mission policy were the only insurance available to compensate for Bailey's negligent acts. Section 16371 provides that driving privileges shall not be restored until judgment debtors such as Bailey give proof of ability to respond in damages. Mission certified Bailey to the department as able to so respond for negligently caused harm, and thus we must first look to the terms of its policy and the statutes governing the meaning of the provisions in that operator's policy.

As previously noted an individual in Bailey's situation is required to furnish proof of ability to respond in damages and must secure either an owner's policy as provided by section 16451, an operator's policy as prescribed by section 16452, or a policy satisfying both such sections. The operator's license so issued is restricted according to the type of certificate of insurance filed with the department.

It is a further statutory requirement that ''Unless the certificate or certificates filed with the department evidencing the issuance of a motor vehicle liability policy show that the person in whose behalf they are filed is covered in the operation of all vehicles *registered in his name, and any motor vehicle not owned or registered in his name*, the department shall place an appropriate restriction'' on his driver's license (§ 16456). (Italics added.) This latter section explicitly makes registration the sole criterion for the ownership category, and since to obtain a license an individual must

---

[5]Apparently the damages did not exceed the limits of liability on either policy.

come within the ownership category or the operator's category, the phrase "not owned or registered" must have reference to operator's coverage alone. The words "not owned" in that phrase thus must be understood to be the equivalent of "not registered," since anything less than registered ownership must place an individual in the operator's category. Section 16456 also must be deemed to cause the phrase "not *owned* by him" in section 16452, which italicized word was that used in the exclusion in the Mission policy, to mean "not *registered* to him." In the instant context, then, ownership is deemed to be registered ownership.

Although there is some ambiguity in the department's instructions for the filing of form SR 22 (*supra,* fn. 4), its instructions to certifying carriers appear to be in accord with the foregoing interpretation of the applicable statutes. A contrary interpretation would leave a gap in the insurance protection afforded the public whenever persons in Bailey's status operate a vehicle in which they have some interest less than registered ownership. (See *Van Erem* v. *Dairyland Mutual Ins. Co.* (1958) 5 Wis.2d 450 [93 N.W.2d 511, 513-514].) There is no indication in the overall statutory scheme that our Legislature intended any such hiatus in coverage. (See Veh. Code, div. 7, chs. 2, 3. )

█ Thus even though Bailey had an ownership interest in the station wagon through his participation in the joint venture (see Corp. Code, § 15025), since the vehicle was registered in the name of J & B Enterprises rather than in his name it was not a vehicle owned by him within the terms of Mission's nonowner coverage.

Our present determination is similar to that in *Ohio Cas. Ins. Co.* v. *Armendariz,* 224 Cal.App.2d 56 [36 Cal.Rptr. 274], where a carrier issued an operator's policy to a young driver who had an equitable interest in the vehicle which he was operating at the time of the accident. The vehicle was registered in his father's name, although the boy supplied the downpayment. It was held that "in the absence of fraud or a clear misrepresentation" it was not intended that an insurer might be excused from liability under an operator's policy "by merely showing that the insured may possibly have some equitable interest in the vehicle involved and accordingly he becomes an owner thereof" within the meaning of section 16452. (See 224 Cal.App.2d at pp. 64-65; accord *Indiana Lumbermens Mutual Ins. Co.* v. *Parton* (D.C.M.D. N.C. 1957) 147 F.Supp. 887, 889-890.)

Respondent Mission argues that construing its policy to cover Bailey's instant negligence amounts to a circumvention of the licensing law, since he was at least *an* owner of the station wagon and his license restricted him from operating vehicles which he owned. But it does not appear to have been the intent of the applicable statutes or of the department to restrict Bailey from owning a car or operating a vehicle which he owned so long as the vehicle was insured. He was issued a restricted license merely because he was not the registered owner of a vehicle for which he might secure the proof of insurance necessary to be issued an unrestricted license.[6] There is no showing that Bailey attempted to perpetrate a fraud upon the department.

The judgment against Allstate Insurance Company is reversed, and the trial court is directed to enter judgment against respondent Mission Insurance Company. Allstate and all other parties to recover costs on appeal from respondent Mission.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Schauer, J.,* and Dooling, J.,* concurred.

---

[6]The record reflects that after the present accident Bailey made application to register the station wagon in his name and change the insurance coverage to an owner's policy. The department initiated steps to remove the restriction from his operator's license, but an unrelated technicality arose and by the time the department might have issued Bailey an unrestricted license he filed a declaration that he owned no vehicle.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.