[Civ. No. 29005. Second Dist., Div. Three. Mar. 3, 1967.]

UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v. AETNA INSURANCE COMPANY OF HARTFORD, CONNECTICUT et al., Defendants, Cross-complainants and Appellants; ENOCH CHEVROLET COMPANY, Cross-defendant and Respondent.

Kinkle, Rodiger, Graf & Dewberry, Kinkle, Rodiger, Graf, Dewberry & Spriggs, G. G. Baumen, Joe A. Austere and Jerry A. Ramsey for Defendants, Cross-complainants and Appellants.

Betts & Loomis and John A. Loomis as Amici Curiae on behalf of Defendants, Cross-complainants and Appellants.

Joseph W. Jarrett, Frank W. Woodhead and Henry F. Walker for Plaintiff, Cross-defendant and Respondent and for Cross-defendant and Respondent.

MOSS, J.—In this suit for declaratory relief and damages Universal Underwriters Insurance Company (Universal), which had issued a comprehensive automobile liability policy to Enoch Chevrolet Company (Enoch), an automobile dealer, was awarded a judgment after trial against Aetna Insurance Company of Hartford, Connecticut (Aetna), upon a garage liability policy issued to Wilson Leasing Company (Wilson). The dispute arose out of an accident involving a car sold by Enoch to Wilson and driven by Hayde, an employee of Enoch.

Three suits were commenced by the persons injured in the accident against Wilson, Enoch and Hayde,[1] which was settled pursuant to an agreement whereby each insurance company paid a portion of the claims, fees and costs which they agreed were reasonable and reserved for later determination their rights as between themselves. Universal then brought this action for declaratory relief against Aetna to have determined their respective rights under the two policies.

---

[1] General Motors was also named a defendant but no issue concerning its liability is raised on this appeal.

Aetna and Wilson cross-complained against Universal and Enoch, alleging that the accident was caused solely by the negligent installation of power brakes in the car by Enoch and that therefore Universal should stand the entire loss. Each policy provided coverage greater than the amount of the settlement. The trial court found that Wilson was the owner of the car on the date of the accident and that Hayde was driving the car with Wilson's permission. It concluded that the Aetna policy provided primary insurance covering the accident and held that Aetna should bear the entire loss.

## Wilson was the Owner of the Automobile

The evidence supports the finding that Wilson was the owner of the car on the date of the accident. In January 1959, when these events occurred, Wilson owned about 400 cars which were out on long term leases. During the previous year Wilson had purchased about 45 cars from Enoch. These sales were made by direct dealing between Dolbier, the fleet manager of Enoch, and Firth, sales manager of Wilson. Wilson was located some distance away from Enoch. On January 14, 1959, Firth telephoned Dolbier and ordered a Chevrolet convertible for Wilson equipped with power brakes and power steering. Enoch delivered the designated car to Wilson's premises the next day minus the power steering and brakes. When Wilson's customer refused to accept the car as delivered, Firth asked Dolbier to pick the car up and install the missing equipment. Enoch complied. The accident occurred on January 21, 1959 when Hayde, an employee of Enoch, was delivering the car back to Wilson. The sole and proximate cause of the accident was the negligent installation of power brakes in the car by Enoch. After repairing the minor damage which the car had suffered in the accident, Enoch returned the car to Wilson.

On January 14, 1959, the date of the sale, Dolbier, on behalf of Enoch, prepared a dealer's notice and report of sale pursuant to Vehicle Code section 177. In the space marked "Purchaser's Certification" Dolbier signed "Wilson Auto Leasing—Ken Firth." Dolbier testified that he had made sales to Firth over the telephone many times in the past and that on prior occasions he had signed reports of sale to Wilson in a similar manner and that Firth, on behalf of Wilson, had approved of this practice. Enoch mailed the dealer's notice of sale to the Department of Motor Vehicles on the day of the

sale or the next day. It was received by the department on January 19th, two days before the accident.

Enoch submitted two invoices to Wilson, one for the car as originally delivered and the second for the power equipment. Wilson paid both invoices. Some time after the accident Wilson asked Enoch to take back the car. Enoch refused and Wilson later paid for the car and sold it.

 Transfer of title to vehicles is governed by the provisions of the Vehicle Code. (*Singleton* v. *Perry*, 45 Cal.2d 489, 493-494 [289 P.2d 794].) Enoch gave notice to the Department of Motor Vehicles within the time specified in Vehicle Code section 177, subdivision (b),[2] and before the accident occurred. Whether or not under the circumstances Dolbier had authority to sign for Firth and whether title was intended to pass at the time the car was first delivered to Wilson were questions of fact for the trial court to determine. The evidence amply supports those findings. Even though the car was delivered without the power equipment which had been ordered, Wilson accepted the car and delivered it to its lessee. When the car was returned by the lessee, Wilson did not then attempt to rescind the sale, but instead merely requested that Enoch pick up the car and install the missing equipment. Therefore, for the purpose of determining which insurer is liable for damages arising out of the accident, we must regard Wilson, not Enoch, as the owner. (*Stoddart* v. *Peirce*, 53 Cal.2d 105 [346 P.2d 774] ; *Meza* v. *Ralph*, 195 Cal.App.2d 453 [15 Cal.Rptr. 754] ; *Borjesson* v. *Simpson*, 177 Cal.App.2d 365, 370-371 [2 Cal.Rptr. 366] ; *Gorham* v. *Taylor*, 176 Cal.App.2d 600 [1 Cal.Rptr. 546].)

*The Aetna policy issued to Wilson covered the accident.*

Since respondents concede that the Universal policy issued to Enoch covered the accident, we shall examine the Aetna policy issued to Wilson to determine if it also provided coverage. In construing the Aetna policy we are guided by the well established principle that ''any uncertainties in insurance policies whether as to perils insured against . . . or the person or persons insured, will be resolved against the

---

[2]Veh. Code, § 177, subd. (b), reads as follows: ''[Notice by dealer: Form.] Every dealer upon transferring by sale, lease or otherwise any vehicle, whether new or used, of a type subject to registration hereunder, shall, not later than the end of the next business day of the dealer, give written notice of such transfer to the department upon an appropriate form provided by it but a dealer need not give such notice when selling or transferring a new unregistered vehicle to another dealer.''

insurer and in favor of imposing liability.'' (*Continental Casualty Co.* v. *Zurich Ins. Co.*, 57 Cal.2d 27, 32 [17 Cal.Rptr. 12, 366 P.2d 455].) We consider the Aetna policy as if it provided the only coverage available. (*Mission Insurance Co.* v. *Feldt,* 62 Cal.2d 97, 101 [41 Cal.Rptr. 293, 396 P.2d 709]; see Hartwick, *How to Read a Liability Insurance Policy* (1961) 13 Hastings L.J., p. 175.) ■ In the insuring paragraph of its policy Aetna agreed ''To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages . . . caused by accident and arising out of the hazards hereinafter defined.'' The definition of hazards included in pertinent part ''the ownership, maintenance or use of the premises for the purpose of an automobile dealer[3] . . . and all operations necessary or incidental thereto, and the ownership, maintenance or use of any automobile in connection with the above defined operations.'' One of the named insureds under the policy was ''Wilson Leasing Company.'' The automobile in question was purchased by Wilson for lease to a customer and at the time of the accident was being returned to Wilson after the installation of power equipment requested by Wilson's customer. The automobile was being used in connection with a purpose incidental to the operation of an automobile dealer and the accident was therefore a hazard insured against under the terms of the policy.

■ However, even if the policy by its terms had not covered the hazard, Aetna could not have limited its coverage of automobiles owned by Wilson to those used in automobile dealer sales operations to the exclusion of its leasing business because Vehicle Code section 415, subdivision (b) (now § 16451) was incorporated into the policy and did not permit limitation of the coverage to use in connection with any particular business. (*Interinsurance Exchange* v. *Ohio Casualty Ins. Co.*, 58 Cal.2d 142, 148 [23 Cal.Rptr. 592, 373 P.2d 640]; see *Wisdom* v. *Eagle Star Ins. Co.*, 211 Cal.App.2d 602, 604 [27 Cal.Rptr. 599].)

■ We next consider whether Enoch was insured by the Aetna policy. The policy included as an additional insured ''any person while using an automobile covered by this policy, and any person or organization legally responsible for the use

---

[3] Endorsement 5 to the policy changes the term ''automobile dealer'' to ''automobile sales'' agency. In view of the discussion which follows, we regard the difference in terminology as immaterial.

thereof, provided that the actual use of the automobile is by the named insured or with his permission.''

The trial court found that at the time of the accident Hayde, Enoch's employee, was driving the automobile with the permission of Wilson. Whether the permission required by the policy provision quoted above was present was a question of fact. We are bound by any reasonable inferences drawn by the trial court from the evidence. (*Exchange Cas. & Surety Co.* v. *Scott*, 56 Cal.2d 613, 622 [15 Cal.Rptr. 897, 364 P.2d 833] ; *Peterson* v. *Grieger, Inc.*, 57 Cal.2d 43, 51 [17 Cal.Rptr. 828, 367 P.2d 420].) The evidence of prior dealings between Enoch and Wilson supports the inference that Wilson gave permission to Enoch to return the car to Wilson when the installation of the missing power brakes was completed.

Quite clearly, Hayde was ''using'' the car when it went out of control. As Hayde's employer, Enoch was an ''organization legally responsible for the use'' of the automobile and thus fits within the policy definition of an additional insured.

The fact that Enoch's legal responsibility in this case arose out of its negligence in installing the brakes before it put the car on the road rather than the negligent operation of the car by its employee does not require a different construction of the policy language. Such a construction would be strained and contrary to the rule which requires that the policy be construed in its most inclusive sense for the benefit of the insured. (*Continental Casualty Co.* v. *Phoenix Construction Co.*, 46 Cal.2d 423, 438 [296 P.2d 801, 57 A.L.R.2d 914].) The terms of the policy do not require that the liability of the additional insured arise from its negligence while using the covered vehicle. (*American Auto Ins. Co.* v. *Transport Indemnity Co.*, 200 Cal.App.2d 543, 548-551 [19 Cal.Rptr. 558].) ''The term 'using' when employed in a policy without restrictive terms, must be understood in its most comprehensive sense. It does not require that the injury be the direct and proximate result in any strict legal sense of the active movement of the motor vehicle covered by the policy.'' (*Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange,* 190 Cal.App.2d 194, 202 [11 Cal.Rptr. 762]*, see also *St. Paul Fire & Marine Ins. Co.* v. *Hartford Accident & Indem. Co.*, 244 Cal.App.2d 826, 830-831 [53 Cal.Rptr. 650] ; cf. *Entz* v. *Fidelity & Casualty Co.*, 64 Cal.2d 379, 385 [50 Cal.Rptr.

---

*Partially overruled on other grounds in *Continental* v. *Zurich Ins. Co., supra,* 57 Cal.2d 37, 38.

190, 412 P.2d 382].) The Aetna policy covered injuries "arising out of" the hazards defined therein which as we have seen included this accident. That term is broad enough to include any cause in fact rather than only legal or proximate cause. Its use indicates an intention to cover any accident arising out of the use of a covered automobile with the permission of the named insured rather than only accidents proximately caused by such use.

*City of Santa Monica* v. *Royal Indemnity Co.*, 157 Cal.App. 2d 50 [320 P.2d 136], is a case in point. There two passengers were injured when a wheel of the tram in which they were riding passed over a defective manhole cover maintained by the city. The tram company was not negligent. Its policy covered injuries "caused by accidents arising out of the . . . use of the automobile" (tram). (Page 52.) The court held "There is no room for doubt that the accident in question arose out of the use of the automobile. . . . *American Auto. Ins. Co.* v. *American Fid. & Cas. Co.*, 106 Cal.App.2d 630, 637 [235 P.2d 645] : 'Under the defendant's policy it is liable for damages because of injury to property caused by the accident and arising out of the *use* of the motor vehicle. Such a policy does not require that the injury be a direct and proximate result, in any strict legal sense of that term, of the use of the motor vehicle covered by the policy.' " (157 Cal.App.2d at p. 55.) ▆▆ Thus, the fact that the operation of the motor vehicle by Hayde was not the proximate cause of the accident is immaterial; the accident did arise out of the use of the automobile by Hayde and was therefore covered by the Aetna policy. We need not consider, therefore, whether the installation of the power brake unit by Enoch was a use of the vehicle. (See *Yandle* v. *Hardware Mutual Ins. Co.*, 314 F.2d 435 (9th Cir.).)

In view of our finding that the Aetna policy by its terms provided coverage we find it unnecessary to discuss appellants' contention that the provisions of the California Financial Responsibility Law do not require coverage in this case. We note, however, that cases which consider coverage under that law are not necessarily binding in a case where the question presented is the construction of an insurance policy. The underlying policy in favor of finding coverage does not apply where the question is whether the negligence of the user should be imputed to the owner by reason of the statutory

liability imposed by the vehicle code. (*Exchange Cas. & Surety Co.* v. *Scott, supra,* 56 Cal.2d 613, 619.)

### The Aetna policy Issued to Wilson was Primary

Since both policies covered the accident we next refer to the "other insurance" clauses of the respective policies to determine whether the loss must be borne by one of the two insurers or apportioned between them. The Aetna policy provides, "If the insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss." This is a typical proration clause. The "other insurance" clause in the Universal policy is substantially the same as the foregoing but also contains an excess coverage provision which states that its insurance "with respect to loss arising out of . . . the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."[4]

It is established law that where the owner's policy (as does the Aetna policy here) provides proration and the user's policy or the policy of one legally responsible for the use of the vehicle (as does the Universal policy here) provides excess coverage as to nonowned vehicles, the excess provision is given effect and the owner's policy is held to provide primary coverage. (*American Automobile Insurance Co.* v. *Republic Indemnity Co.,* 52 Cal.2d 507, 511-513 [341 P.2d 675].) The trial court correctly followed this principle in determining that the Aetna policy provided primary coverage and, since the limits on the Aetna policy were higher than the amount of the loss, the excess coverage in the Universal policy did not come into effect. Since Aetna provided primary coverage in an amount sufficient to cover the entire loss, it also was liable to pay all costs of defense including attorney fees. (*Travelers Ins. Co.* v. *Norwich Union Fire Ins. Soc.,* 221 Cal.App.2d 150, 154 [34 Cal.Rptr. 406]; *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co.,* 142 Cal.App.2d 126, 136 [298 P.2d 109].)

Aetna and Wilson argue in effect that since Enoch not Wilson was the tortfeasor, Enoch's insurer should in fairness be

---

[4]Another "other insurance" provision appears in the Universal policy in an endorsement captioned "Use of Other Automobiles—Broad Form." The slight difference in language between the two clauses is immaterial in this case.

required to bear all or part of the loss. Their argument, although not clearly stated, apparently is that because Wilson would have been entitled to indemnification from Enoch had Wilson paid the claims caused by Enoch's negligence, Aetna as Wilson's insurer, is entitled to shift the loss to Universal as Enoch's insurer.

This argument is fallacious and has been rejected before by this court. (*Pacific Indemnity Co.* v. *Liberty Mutual Insurance Co.*, 239 Cal.App.2d 346, 352 [48 Cal.Rptr. 667].) Questions of contribution between coinsurers are decided by reference to the terms of their respective contracts, not the right to indemnification that may exist among the persons insured by the policies. (See for example *Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d 27; *Travelers Indemnity Co.* v. *Colonial Ins. Co.,* 242 Cal.App.2d 227 [51 Cal.Rptr. 724]; *Pacific Indemnity Co.* v. *Liberty Mutual Ins. Co., supra,* 239 Cal.App.2d 346; *American Automobile Ins. Co.* v. *Transport Indemnity Co., supra,* 200 Cal.App.2d 543; *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange, supra,* 190 Cal.App.2d 194.) Aetna insured the risk under its policy and cannot escape liability because the negligence of a party insured by that policy caused the liability to arise. Therefore, the trial court properly refused to pass upon the issue of indemnification raised by the cross-complaint.

The judgment is affirmed.

Ford, P. J., and Frampton, J. pro tem.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 26, 1967.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.