**INDUSTRIAL INDEMNITY COMPANY,
Plaintiff-Appellant,**

v.

**AETNA CASUALTY AND SURETY
COMPANY, Defendant-Appellee.**

No. 25857.

United States Court of Appeals,
Ninth Circuit.

July 17, 1972.

Alexander C. Marrack (argued), of Anthony & Waddoups, Honolulu, Hawaii, for plaintiff-appellant.

Ronald T. Y. Moon (argued), Ronald D. Libkuman, of Libkuman, Shimabukuro & Ventura, Honolulu, Hawaii, for defendant-appellee.

Before BROWNING, WRIGHT and CHOY, Circuit Judges.

CHOY, Circuit Judge:

Industrial Indemnity Company (Industrial), a California corporation, appeals a judgment by a judge without a jury denying subrogation against Aetna Life & Surety Company (Aetna), a Connecticut corporation. Hawaii law controls this diversity of citizenship case. We reverse and remand.

In the summer of 1959, Hawaiian Dredging and Construction Company (Hawaiian Dredging) and Bechtel Corporation (Bechtel) formed a joint venture to construct a cement plant in Hawaii for Hawaiian Cement Corporation (Hawaiian Cement). The Hawaiian Cement contract required the joint venture to maintain general liability insurance, including automobile insurance. The joint venture purchased a comprehensive liability policy from Industrial through B. F. Dillingham Company, Ltd., Industrial's general agent in Hawaii. The joint venture was the named insured. Hawaiian Dredging had previously purchased an identical comprehensive policy

from Aetna, through Dillingham, which was also Aetna's Hawaiian agent.

When the Industrial policy was purchased, the joint venturers had not decided whether the joint venture itself or the individual joint venturers would supply vehicles for the cement project. It was eventually agreed that Hawaiian Dredging would supply all necessary vehicles. Pursuant to this agreement, Hawaiian Dredging purchased and registered with the State of Hawaii a 1959 Fargo truck, the possession of which it transferred two weeks later to the joint venture. From October, 1959 until July, 1960, the truck was used and controlled solely by the joint venture, although title remained with Hawaiian Dredging.

On December 24, 1959, the truck was being driven with the joint venture's permission by Richard H. Hubbard, an employee of a subcontractor. Hubbard hit a car injuring William and Nancy Yen. The Yens sued Hubbard, the joint venture, the individual joint venturers, and the subcontractor in the state court, and recovered a judgment against Hubbard alone. Industrial agreed to defend the lawsuit, and subsequently paid the judgment. Aetna did not participate.

After paying the judgment, Industrial sued Aetna for subrogation. Relying upon parol evidence which indicated that the parties intended that the Industrial policy cover all vehicles used in the cement job, the district court found that the truck was covered by the Industrial, not the Aetna policy. Subrogation was denied, and Industrial appealed.

■ Insurance policies are subject to the general rules of contract construction. A policy's words and terms are construed according to "their plain, ordinary and accepted sense in the common speech of man unless it appears *from the policy* that a different meaning is intended." Teixeira v. Globe Indemnity Co., 349 F.2d 502, 505 (9th Cir. 1965) (emphasis supplied). The parol evidence rule is applicable, and evidence of contemporaneous oral agreement is admissible only to explain an ambiguity in the policy. Finally, ambiguities which

do exist are construed against the insurer, who has the primary duty to provide a clear and unambiguous policy. Law v. Hawaiian Life Insurance Co., Ltd., 51 Haw. 288, 292, 459 P.2d 195, 198 (1969); Yoshida v. Liberty Mutual Insurance Co., 240 F.2d 824, 826 (9th Cir., 1957).

The Industrial and Aetna policies are identical. Automobile coverage is extended to "the named insured" and "any person while using an owned automobile, or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission . . ." This coverage does not apply "with respect to any non-owned automobile" driven by "any person or organization other than the named insured . . ."

Automobile is defined in both policies:

> "Automobile. Except where stated to the contrary, the word 'automobile' means a land motor vehicle or trailer as follows:
>
> "(1) Owned Automobile—an automobile owned by the named insured;
>
> "(2) Hired Automobile—an automobile used under contract in behalf of, or loaned to, the named insured provided such automobile is not owned by or registered in the name of (a) the named insured or (b) an executive officer thereof or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile;
>
> "(3) Non-Owned Automobile—any other automobile."

Each policy specifies that if the insured has other insurance, "the insurance under this policy with respect to loss arising out of . . . the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

■ Neither policy defines "owned," a term which is susceptible to several possible interpretations. However, ownership under Hawaii insurance law turns

upon legal title. "[T]he word 'owner' as applied to motor vehicles is commonly understood to designate the person in whom title is vested either as a legal owner or as a registered owner." *Teixeira, supra*, 349 F.2d at 505. See also Allstate Insurance Co. v. Stevens, 445 F.2d 845, 847 (9th Cir. 1971). Here, title remained with Hawaiian Dredging although the truck was used and controlled by the joint venture. The document transferring possession of the truck to the joint venture states that Hawaiian Dredging "owns" the vehicles. Hawaiian Dredging and not the joint venture "owned" the truck.[1]

Aetna contends, however, that all the parties—the joint venturers, the two insurance companies, and the latter's mutual agent—intended that the truck, like all vehicles controlled by the joint venture, be covered by the Industrial, not the Aetna, policy. The policies do not on their faces so provide, and the parol evidence rule bars any parol evidence which tends to show that the parties' intent was not reflected by the two policies.

In the absence of fraud, duress, mutual mistake, or ambiguity, the parol evidence rule requires the exclusion of extrinsic evidence, oral or written, where the parties have reduced their agreement to an integrated document. 4 Williston on Contracts, § 631, p. 949; Midkiff v. Castle & Cooke, Inc., 45 Haw. 409, 422, 368 P.2d 887, 894 (1962).

> "Once the parties execute an instrument which contains their whole agreement, their previous negotiations and agreements are legally ineffective and evidence relating to those previous negotiations or agreements is ir-

relevant regardless of who offers it." Akamine and Sons, Ltd. v. American Security Bank, 50 Haw. 304, 309, 440 P.2d 262, 266 (1968).

This strict adherence to the parol evidence rule is reenforced in the insurance field by statute. Hawaii Revised Statutes (H.R.S.) § 431–425 reads in part,

> *"Must contain entire contract.* (a) No agreement in conflict with, modifying or extending any contract of insurance shall be valid unless in writing and made a part of the policy.

> "(b) No insurer or its representatives shall make any insurance contract or agreement relative thereto other than as is plainly expressed in the policy."

See Brown v. First Insurance Company of Hawaii, 424 F.2d 680, 681 (9th Cir. 1970). In this case, parole evidence of the parties' intent was inadmissible.

First the two insurance policies are both integrated documents. Each policy contains the recital that "this policy *embodies all agreements* existing between [the insured] and the company or any of its agents relating to this insurance." (emphasis supplied.) When the Industrial policy was purchased, the joint venturers had not yet decided who would supply vehicles for the cement job. However, this indecision does not affect the integration of the policy, which covered three categories of vehicles— owned, hired, and non-owned. The belated decision that Hawaiian Dredging would supply all vehicles resolved how many vehicles would be placed in each category, not whether any one or more of the categories would be covered.

---

1. When legal title of an automobile rests with or is registered to a partnership, the individual partners are not "owners." See State Farm Mutual Automobile Insurance Co. v. General Mutual Insurance Co., 282 Ala. 212, 210 So.2d 688 (1968); Mission Insurance Co. v. Feldt, 62 Cal. 2d 97, 41 Cal.Rptr. 293, 396 P.2d 709 (1964). Compare American Mutual Liability Company of Boston v. Meyer, 115 F.2d 807 (3rd Cir. 1940). Similarly, where, as here, the joint venturers agree that one partner will supply all the vehicles needed, retaining title but allowing them to be used by the joint venture, the vehicles remain the property of the individual joint venturer. Compare Roberts v. Roberts, 118 Colo. 524, 527, 198 P.2d 453, 454 (1948), with In re Perry's Estate, 121 Mont. 280, 287–289, 192 P.2d 532, 536 (1948).

Second, there is no ambiguity in either policy. The term "owner" is not ambiguous. *Teixeira, supra.* Third, there is no evidence of fraud, duress, or mutual mistake. The joint venturers' postponed decision does not indicate that the Industrial policy was founded upon mutual mistake. The parties sought to provide coverage for all vehicles used on the cement job. They did that. All the parties knew when the Industrial policy was purchased that there was a distinct possibility that Hawaiian Dredging alone would, as in the past, supply all vehicles. Nevertheless, the parties agreed to and signed the Industrial policy knowing exactly what it covered.

Fourth, parol evidence is inadmissible as proof of "the subsequent modification or termination of the integrated agreement by parol or written contract." 4 Williston on Contracts, § 631, p. 951 (3rd edition). Any subsequent alterations were made by the joint venturers alone, not by the parties to the insurance policies, which specify that "the terms of this policy [shall not] be waived or changed, except by endorsement issued to form a part of this policy."

Finally, even if the parol evidence rule were inapplicable, H.R.S. § 431–425 expressly bars all modifications of any insurance contract unless written and made a part of the policy, a condition also embodied in the two policies here. The statute is without exception and does not mention intent. An insurance policy must contain all its provisions in writing. Kapahua v. Hawaiian Insurance and Guaranty Co., 50 Haw. 644, 447 P.2d 669 (1968). If the policies here do not conform to the statute the insurance companies must bear the consequences.

The construction contract with Hawaiian Cement does not provide any evidence of the parties' intent. It merely requires the joint venture to maintain adequate comprehensive bodily injury liability insurance. The joint venture properly instructed Dillingham to draft an Industrial policy covering whatever vehicles the joint venture might have. The Industrial policy alone, as written, does that. All the joint venture's vehicles were "hired" or "non-owned." All its vehicles were covered.

It may well have been the parties' intention to obtain a new policy which would cover all vehicles *used by*, not necessarily owned by, the joint venture. It would have been simple to alter the meaning of "owned automobile" to include automobiles used or controlled by the joint venture. But this was not done. It would also have been simple expressly to provide that Aetna's coverage was excess to Industrial's. However, this was not done. It is not for the court to reform an insurance contract to conform to the parties' negotiations or haphazardly expressed intentions.

Aetna argues, nonetheless, that the truck was not covered by its policy when the accident occurred. Aetna asserts that Hawaiian Dredging did not list the truck as covered by the Aetna policy on its regular vehicles audit until July 15, 1960, the day the joint venture returned control of the truck to Hawaiian Dredging. Under Aetna's standard fleet automobile policy, it was not necessary for Hawaiian Dredging to report each newly acquired automobile when purchased. At the end of each policy period, an audit was performed and Hawaiian Dredging retroactively informed Aetna which vehicles had been covered during the previous period. After each audit, the insurance premium was based upon the number of vehicles actually insured during the preceding year.

The truck in question was purchased in October, 1959, and transferred to the joint venture shortly thereafter. The next audit occurred at the end of the year, but Aetna did not introduce this audit into evidence. Instead, it presented the 1961 audit, which contained the notation that Hawaiian Dredging added the truck to coverage on July 15, 1960. Aetna argues that since

Hawaiian Dredging did not consider the truck to be covered by the Aetna policy until mid-July, it could not have been covered by the Aetna policy when the accident happened in December, 1959.

This argument fails for two reasons. First, the custom was that the truck was covered by the Aetna policy until Hawaiian Dredging affirmatively asked in writing that it be removed from the policy's protection. Until specifically excluded, the truck was covered by the Aetna policy.[2]

Second and more important, the Yen accident occurred on December 24. Assuming *arguendo* that the 1961 notation indicates that Hawaiian Dredging did not consider the truck to be covered in 1959, such retroactive annulment of liability coverage is prohibited by statute after the occurrence of injury for which the insured may be liable. H.R.S. § 431–433. After December 24, neither Aetna nor Hawaiian Dredging could annul coverage.

▪ Finally, Aetna asserts that it is not liable because Hubbard did not comply with the terms of the Aetna policy regarding notice of the accident and the Yens' suit. Although Aetna raised this defense in its answer, it was not pressed at trial. In fact, Aetna's counsel twice informed the court that he was not raising faulty notice as a defense. Aetna thereby waived this defense, and cannot resurrect it on appeal.

▪ In sum, we hold that the truck was covered by the Aetna policy as an "owned automobile." Industrial concedes that the truck was also covered by its own policy as a "non-owned automobile." Therefore, Aetna was primarily liable for the Yen judgment which Industrial paid. Since Industrial defended the Yen litigation and satisfied the judgment, it is entitled to subrogation. Alamida v. Wilson, 53 Haw. ——, 495 P. 2d 585 (April 5, 1972); Kapena v. Kaleleonalani, 6 Haw. 579 (1885); First Insurance Company of Hawaii v. Continental Casualty Company, 466 F.2d 807 (9th Cir. 1972). Industrial is entitled to recover from Aetna the amount of the Yen judgment plus half the costs, expenses, and attorneys' fees for defending that action. In First Insurance Company of Hawaii v. Continental Casualty Co., 466 F.2d 807 (9th Cir. 1972), also decided today, we hold it fair and equitable that insurance companies with independent but mutual duties to defend split defense costs equally regardless of the pro rata division of the principal liability. Both Industrial and Aetna shared a duty to defend the Yen lawsuit; both companies are liable for that judgment although Aetna's liability is primary and Industrial's excess. Each company should pay half the defense costs.[3]

Reversed and remanded for entry of judgment for Industrial in the amount of the Yen judgment, half the costs, expenses, and attorneys' fees for that litigation, and all costs, expenses, and reasonable attorneys' fees for this litigation.

---

2. The Aetna policy provides that premiums shall be adjusted semi-annually on the basis of statements submitted by the insured. *Extrinsic evidence is admissible to establish the trade usage for the computation of these fleet automobile premiums unless it contradicts the express language of the contract.* Honolulu Paper Co., Ltd. v. Makino, 34 Haw. 87, 92 (1937); 5 Williston on Contracts, § 650, p. 21 (3rd Edition). The evidence here does not contradict, modify or extend the insurance contract. Therefore, H.R.S. § 431–425 is also inapplicable.

3. Contra, Universal Underwriters Insurance Co. v. Aetna Insurance Company of Hartford, Connecticut, 249 Cal.App.2d 144, 57 Cal.Rptr. 240 (1967).