No. 28,947.

THE STATE OF KANSAS, *Appellee*, v. DAISY P. RAZEY, *Appellant*.

(282 Pac. 755.)

Opinion filed December 7, 1929.

*Jean Madalene*, of Wichita, for the appellant.

*William A. Smith*, attorney-general, *R. O. Mason*, assistant attorney-general, *William J. Wertz*, county attorney, and *George L. Adams*, deputy county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The defendant was convicted of a hit-and-run offense under the statute relating to the operation of automobiles on public highways, the pertinent part of which reads:

" . . . Any person operating a motor vehicle in this state who shall cause injury to any person or persons in the operation of said motor vehicle shall stop immediately and give his name and residence and any other information demanded, together with the license number of his motor vehicle, to the injured person or persons or others present, and in case of death or serious injury by such accident he shall immediately report the same to the sheriff of the county or to the chief of police, city marshal or other peace officer in the nearest town or city. The failure of any such person to comply with the provisions of this section shall be punished by a fine of not more than one thousand dollars ($1,000) or by imprisonment in the county jail for not more than six months, or by both such fine and imprisonment." (Laws 1925, ch. 84, § 1.)

The evidence for the state, with nothing substantial to combat it, tended to show that sometime after midnight on December 25, 1928, the defendant and her husband were riding northward on Waco street in Wichita in an automobile, defendant being at the wheel. As they passed an intersection defendant drove her car against two persons who were crossing the street, killing one of them and severely injuring the other. Instead of stopping as required by the statute and by the instincts of humanity she drove away. She made a statement to the police which fully covered the facts. In part, it reads:

"A. . . . I didn't see anyone until I struck some one, and it frightened me so terribly that I didn't stop and I drove on. My husband begged me to stop, but I lost my head and didn't stop; that's all I can say. I didn't really think that they were hurt but my husband thought they were. . . .

"Q. Where did you drive to after you had the accident? A. I went straight home. . . .

"Q. How long did he [husband] stay at home after you got back and before taking the car and leaving? A. I don't remember; quite a little while. . . .

"Q. Have you heard from him since he left? A. No, I have heard nothing from him. . . .

"Q. Well, about how fast would you say you were driving? A. About twenty or twenty-five miles an hour. . . .

"Q. Do you know when your husband took the license plate off the car? A. I don't know."

On behalf of defendant a demurrer to the evidence was filed, also a motion for an instructed verdict. These being overruled, the cause

went to the jury, who found a verdict of guilty. Defendant's motion for a new trial was overruled and she was sentenced in accordance with the statute and its complement, R. S. 76-2501 *et seq.*

Defendant challenges the constitutionality of the statute in so far as it requires a person who in the operation of an automobile injures another person to stop and give the information outlined in the act. She invokes that provision of section 10 of the bill of rights, which declares that: "No person shall be a witness against himself." She argues that this constitutional guaranty is violated by the statutory obligation imposed on a motorist who causes injury to a person on the highway to stop and give his name, residence, motor-license number, and any other information demanded, to the injured person or others present, and to report the incident to the sheriff or nearest police officer. We cannot assent to that. The requirements of the statute are proper police regulations necessitated by the use of motor vehicles on the highway. The information which a motorist who causes injury to another is required to give is information pertinent to the accident, not irrelevant information. Defendant's privilege of operating an automobile on the streets of Wichita was conditioned on her obligation to stop and give the statutory information and report the injury to the proper public officer. This condition was binding upon defendant as upon all who accept the privilege of operating motor cars on the public highways. In *People v. Rosenheimer,* 209 N. Y. 115, 46 L. R. A., n. s., 977, the New York court of appeals had this question under consideration. The New York statute was substantially like ours, and the New York constitutional provisions against compulsory self-incrimination were much the same. That court held:

"It involves no violation of public policy or of the principles of personal liberty to enact that as a condition of operating such a machine the operator must waive his constitutional privilege and tell who he is to the party who has been injured or to the police authorities, if requiring him to give such information is an impairment of his constitutional privilege, which is not decided." (Syl. ¶ 2.)

In the opinion it was said:

"Cullen, Ch. J. . . . I do not assert that all constitutional privileges may be waived as a condition to the exercise of privileges granted by the legislature. Certain ones cannot be waived, but others may. . . .

". . . The operator [of a motor car] is not obliged to report the circumstances from which his culpability may be inferred, and if he be culpable it does not necessarily follow that he has been guilty of a crime. A long distance

separates the negligence which renders one criminally liable from that which establishes civil liability. That a defendant can be compelled as a witness to testify to facts establishing his civil liability is unquestionable. . . . When we bear in mind not only the great danger occasioned by the use of motor vehicles, but also the fact that the great speed at which they can be run enables the person causing injury to readily escape undetected, leaving parties injured in person or property unable to tell from whom they shall seek redress, I think it involves no violation of public policy or of the principles of personal liberty to enact that, as a condition of operating such a machine, the operator must waive his constitutional privilege and tell who he is to the party who has been injured, or to the police authorities, if indeed, requiring him to give such information is an impairment of his constitutional privilege, which we do not decide." (pp. 122, 123, 124.)

In *Ex Parte Kneedler*, 243 Mo. 632, 40 L. R. A., n. s., 622, it was held that a similar statute did not violate the constitutional provision that no person shall be compelled to testify against himself in a criminal cause. The court said:

"The statute is a simple police regulation. It does not make the accident a crime. If a crime is involved, it arises from some other statute. It does not attempt in terms to authorize the admission of the information as evidence in a criminal proceeding. The mere fact that the driver discloses his identity is no evidence of guilt, but rather of innocence. (*State v. Davis*, 108 Mo, 666, 32 Am. St. Rep. 640, 18 S. W. 894.) On the contrary, flight is regarded as evidence of guilt. In the large majority of cases, such accidents are free from culpability. If this objection to the statute is valid, it may as well be urged against the other provisions, which require the owner and chauffeur to register their names and number, and to display the number of vehicle in a conspicuous place thereon, thus giving evidence of identity, which is the obvious purpose of the provisions. (*St. Louis v. Williams*, 235 Mo. 503, 139 S. W. 340.) We have several statutes which require persons to give information which would tend to support possible subsequent criminal charges, if introduced in evidence. Persons in charge are required to report accidents in mines and factories. Physicians must report deaths and their causes, giving their own names and addresses. Druggists must show their prescription lists. Dealers must deliver for inspection foods carried in stock. We held a law valid which required a pawnbroker to exhibit to an officer his book wherein were registered articles received by him, against his objection based on this same constitutional provision. We held this to be a mere police regulation, not invalid because there might be a possible criminal prosecution in which it might be attempted to use this evidence to show him to be a receiver of stolen goods." (p. 639.)

A later case which collates a number of authorities to the same effect is *Scott v. State*, (Tex. Crim. App.) 233 S. W. 1097, 16 A. L. R. 1420 and note at 1425-1429. See, also, 42 C. J. 1384.

Another objection to the judgment is that the information charged

separate and distinct offenses in one count. It does not appear that this point was fairly raised in the court below, but in any event it is without merit. The information is drawn in the language of the statute which defines one offense, not two or several offenses, and pursuant thereto defendant was properly convicted of but one offense and subjected to but one punishment.

The judgment is affirmed.