[No. D001507. Fourth Dist., Div. One. Apr. 10, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
MAX R. McLEMORE, Defendant and Appellant.

COUNSEL

William A. Cohan and James J. Grier for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Carney and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, Acting P. J.**—A four-count information charged self-styled tax protester Max R. McLemore with wilfully failing to file state income tax returns with the intent to evade taxes for the years 1977 through 1980 in violation of Revenue and Taxation Code section 19406.[1] McLemore negotiated a plea bargain in which he pleaded nolo contendere to violating section 19401,[2] a misdemeanor, for failing to file income tax returns for those years preserving his right on this appeal to pursue the argument he unsuccessfully made to the trial court. ▉ McLemore contends he was excused from filing state income tax returns because of his privilege against self-incrimination contained in article I, section 15 of the California Constitution. Guided principally by *United States* v. *Carlson* (9th Cir. 1980) 617 F.2d 518 we reject his argument and affirm the judgment.

DISCUSSION

McLemore believes the government may not validly collect an income tax on wages earned. Eschewing a direct challenge to the state or federal government's authority to tax, but nonetheless determined to defeat the government's withholding system, McLemore filed a false withholding exemption certificate for each of the years 1977 through 1980. Although his annual wages ranged from $18,000 to $40,000 McLemore certified under penalty of perjury that he was exempt from federal income taxes. Recognizing this act is punishable under 26 United States Code section 7205, he now claims he cannot be prosecuted for failing to file a California state income tax return because to do so in effect would compel him to incriminate himself

---

[1]Unless otherwise specified all statutory references are to the Revenue and Taxation Code.

[2]At the time of the violations alleged in the information section 19401 provided in part: "Any person who, with or without intent to evade any requirement of this part or any lawful requirement of the Franchise Tax Board under this part, fails to file any return or to supply any information required under this part, or who, with or without such intent, makes, renders, signs, or verifies any false or fraudulent return or statement, or supplies any false or fraudulent information, is liable to a penalty of not more than one thousand dollars ($1,000). . . . [¶] . . . [and] is also guilty of a misdemeanor . . . ."

as to the false withholding certificate.[3] The reason for this is that California and federal statutes provide for reciprocal sharing of taxpayer information between the Franchise Tax Board and the Internal Revenue Service. (See § 19286; 26 U.S.C. § 6103(d).)

On virtually identical facts, *United States* v. *Carlson, supra,* 617 F.2d 518 held the Fifth Amendment does not shield a taxpayer from a prosecution for failure to file a complete income tax return where information on the return would likely indicate that the taxpayer previously filed a false withholding certificate. In reaching this conclusion, the *Carlson* court read *California* v. *Byers* (1971) 402 U.S. 424 [29 L.Ed.2d 9, 91 S.Ct. 1535] for the proposition that the Supreme Court has recognized the privilege against self-incrimination is not absolute. Rather, the individual's need for protection must be balanced against the government's need for information. (*Carlson, supra,* 617 F.2d at p. 521 and fn. 5.) In applying this analysis, the court noted that Carlson's initial crime—the false withholding certificate—was an integral part of an overall plan to evade payment of his income tax. Thus, the Fifth Amendment privilege was not an after-the-fact shield to protect Carlson from a government inquisition but rather a premeditated sword to implement his tax protest philosophy. (*Id.,* at p. 522.) On the other side of the ledger, the court recognized that the efficacy and equity of the income tax system depend on accurate self-reporting by individual taxpayers. (*Id.,* at p. 523.) Carlson further observed that the objective of the tax return filing requirement, as evidenced by the broad scope of persons to whom it applies, is not to elicit incriminatory information but rather to make possible the collection of government revenue. (*Ibid.*) This may be contrasted with reporting requirements directed at a "highly selective group inherently suspect of criminal activities." (*Albertson* v. *SACB* (1965) 382 U.S. 70, 79 [15 L.Ed.2d 165, 172, 86 S.Ct. 194]; see *California* v. *Byers, supra,* 402 U.S. at pp. 429-430 [29 L.Ed.2d at p. 18].) In Carlson's circumstances, the court concluded the interests sought to be protected by the Fifth Amendment privilege did not warrant its application to shield a patent tax evasion scheme. (617 F.2d at p. 523.)

It is well-established federal law that the Fifth Amendment privilege does not extend to a taxpayer's failure to file any tax return at all. (*United States* v. *Sullivan* (1927) 274 U.S. 259, 263-264 [71 L.Ed. 1037, 1039-1040, 47 S.Ct. 607, 51 A.L.R. 1020].) The procedure the taxpayer must follow is to

---

[3]McLemore concedes under the rationale of *Byers* v. *Justice Court* (1969) 71 Cal.2d 1039 [80 Cal.Rptr. 553, 458 P.2d 465], that the state may validly require the filing of a tax return, no matter how incriminatory, as long as the information in the return is not used to prosecute the taxpayer for prior criminal conduct. Consistent with *Byers,* however, he argues he cannot be prosecuted for failure to file a return until a "use restriction" standard has been articulated and applied by a California court. (*Id.,* at p. 1058.)

file a return and specifically object to providing requested information he believes may incriminate him. (*Ibid;* see also *United States* v. *Neff* (9th Cir. 1980) 615 F.2d 1235, 1238.) While reliance on *Sullivan* would easily dispose of the case before us—since McLemore filed no return at all—we agree with the *Carlson* court that *Sullivan* cannot be justified by the fiction that the mere filing of a return is not incriminatory. (617 F.2d at p. 521, fn. 5.) Rather, the correctness of the *Sullivan* result follows from proper application of the balancing process articulated in *California* v. *Byers* and applied in *Carlson.* We note in this context that McLemore's failure to file a tax return has not only deprived the Franchise Tax Board of important information; it effectively deprived the state of revenue as well, thus substantially magnifying the importance of the governmental interest in requiring that a return be filed.

McLemore places extensive reliance on the California Supreme Court decision in *Byers* v. *Justice Court, supra,* 71 Cal.2d 1039, in which the court held that a motor vehicle operator's Fifth Amendment rights were violated where he was compelled by the state's "hit-and-run" law to stop following an automobile accident and furnish his name and address to the driver of the other vehicle and where such information was later used to prosecute the operator for a Vehicle Code violation which contributed to the cause of the accident. McLemore's reliance on *Byers* v. *Justice Court* is curious in that the California Supreme Court's opinion was vacated by the United States Supreme Court in an opinion holding that no Fifth Amendment violation had occurred. (*California* v. *Byers, supra,* 402 U.S. 424.) We infer from McLemore's reliance on the state constitution that he is attempting to suggest that *Byers* v. *Justice Court* indicates a proper interpretation of the state constitutional protection against self-incrimination. (See also *Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802 [210 Cal.Rptr. 204, 693 P.2d 789].) *Byers* v. *Justice Court,* however, was decided on strictly federal grounds relying on a line of U.S. Supreme Court cases which was clarified in *California* v. *Byers.* The California Supreme Court took no opportunity on remand of the case to articulate an "independent state ground" for its holding. (Compare *People* v. *Ramos* (1984) 37 Cal.3d 136, 142, 159 [207 Cal.Rptr. 800, 689 P.2d 430].) We can thus find no reason to conclude that *Byers* v. *Justice Court,* given its subsequent history, is supportive of McLemore's argument.

Even were *Byers* v. *Justice Court* arguably suggestive of an independent state constitutional standard, however, we would not be inclined to articulate it in the present case where, as a practical matter, such an independent standard would be meaningless. Even if McLemore's failure to file a state return were deemed privileged, his filing of a federal return would still be mandated under *United States* v. *Carlson, supra,* 617 F.2d 518. The incrim-

inating information in his state return which McLemore seeks to protect is thus already available to the federal government, on which it can base a charge of filing a false withholding certificate. We prefer to limit invocation of the independent state grounds rationale, in circumstances in which we may do so (see *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744]), to only those situations where it will make some meaningful difference.

Accordingly, we conclude McLemore's conviction on a charge of failing to file a tax return did not violate his privilege against self-incrimination guaranteed by the California Constitution.[4]

### DISPOSITION

Judgment affirmed.

Work, J., and Butler, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 17, 1985.

---

[4]McLemore attempts to raise an additional issue, arguing in effect that even if he cannot validly claim the privilege against self-incrimination as a defense, his good faith in invoking the privilege negates the mental state of "willfulness" necessary to support his conviction. (See *United States* v. *Carlson, supra,* 617 F.2d at pp. 523-524.) In making this argument, McLemore ignores the fact that his plea of nolo contendere admitted all facts necessary to the conviction (see *People* v. *Padfield* (1982) 136 Cal.App.3d 218, 228 [185 Cal.Rptr. 903]), which includes the existence of the requisite mental state. Furthermore, his statement of grounds for appeal do not include any argument regarding mental state and for that reason alone renders his claim not cognizable. (Pen. Code, § 1237.5.) Moreover, while McLemore was originally *charged* with a crime which requires a "willful" mental state (§ 19406), the crime of which he was *convicted* (§ 19401) includes no such requirement.